John MooreIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| ALAN HUNT; and | ) |
| COMMONWEALTH SECOND AMENDMENT, INC | ) |
|     Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) **Docket No.** 1:16-cv-10668 |
| JOHN MOORE, Chief of the Town of Holliston | ) |
| Department of Police; | ) |
|     Defendant | ) |

## COMPLAINT

Plaintiffs, Alan Hunt and Commonwealth Second Amendment, Inc., for their Complaint against Defendant, John Moore, Chief of the Town of Holliston Police Department in his official capacity (hereinafter "Defendant"), state as follows:

## INTRODUCTION

1. This is an action for declaratory and injunctive relief brought to vindicate Plaintiffs' Constitutional rights under the Second and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and 28 U.S.C. § 2201. This matter presents an as applied constitutional challenge to M.G.L. c. 140 § 131(d)(i)(e).

## PARTIES

2. Plaintiff Alan Hunt ("Hunt") is a resident of the Town of Holliston, MA.

3. Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under the Massachusetts law with a principal place of business in Natick,

Massachusetts.

4. Defendant John Moore is the Chief of Police for The Town of Holliston's Department of Police and is responsible for executing and administering the town's laws, customs, practices and policies regarding firearms licenses pursuant to powers granted by M.G.L. ch. 140, §§ 131 and 131A. Chief Moore is presently enforcing the laws complained of in this action, and is sued in his official capacity as the statutorily authorized Licensing Authority for the Town of Holliston.

## JURISDICTION and VENUE

5. This Court has jurisdiction of this claim under 28 U.S.C. §§1331, 1343, 2201, 2202, and 42 U.S.C. § 1983, and U.S. Const. Amend. II and XIV.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## BACKGROUND

7. Plaintiffs restate and re-allege the above-listed paragraphs.

8. On June 26, 2008, the Supreme Court of the United States held in District of Columbia v. Heller, 128 S.Ct. 2783 (2008) that the right of individuals to keep and bear arms for self-defense is enshrined in the Second Amendment to the United States Constitution. As specifically stated by the Heller Court: "we hold that the District's ban on *handgun possession* in the home violates the Second Amendment. . .. Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must . . . issue him a license to carry [a handgun] in the home." Id. (emphasis added). On June 28, 2010, the Supreme Court of the United States held in McDonald v. City of Chicago, 130 S. Ct. 3020 (2010), that the Second Amendment right to keep and bear arms restrains state and local governments through incorporation in the Fourteenth Amendment.

9. On August 13, 2014, Governor Patrick signed into law M.G.L. Chapter 284, an Act Relative to the Reduction of Gun Violence. The law changed the prior Massachusetts gun licensing scheme by, among other things, eliminating the LTC-B license. Neither that change in the prior law, nor others, materially affected the relevant legal issues presented in this matter or as were previously litigated in the matters <u>Wesson, et al v. Town of Salisbury, et al</u>, No. 13–10469–RGS, 2014 WL 1509562 (D. Mass. April 18, 2014), and <u>Steven Richmond v. Michael Peraino Chief of Hingham Police Department</u>, Civ. Action 15-10933-LTS (D. Mass. Sept. 9, 2015).

10. The Commonwealth of Massachusetts gun licensing scheme establishes two classes of license relative to "firearms": 1) Class A License to Carry ("LTC-A"), and 2) Firearm Identification Card ("FID") plus an additional Permit to Purchase ("PTP").

11. Under M.G.L. ch. 140, §§ 131(d), 131A Massachusetts residents apply for LTCs, FIDs, and/or PTPs from the police chief of the town or city where they reside or have a place of business. The police chief is authorized by statute as the "Licensing Authority" for all firearms licensing activity in his jurisdiction. <u>See</u> M.G.L. ch. 140, §§ 121, 131(a), 131(b), 131(d).

12. The Massachusetts licensing scheme utilizes otherwise common terms as "terms of art" with very specific statutory meaning, often leading to confusion in legal argument. Relevant to the present case, "As used in [Chapter 140] sections 122 to 131P, inclusive, … 'Firearm' [is] a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches. . .." <u>M.G.L. c. 140 § 121</u>; <u>see also Massachusetts Model Jury Instruction 7.600 and cases cited therein</u>. Accordingly, the Massachusetts definition of "firearm" covers all forms of handguns.

13. M.G.L. c. 140 § 121 mandates that "[a]s used in [Chapter 140] sections 122 to 131P, inclusive . . . 'Large capacity weapon', [is] any *firearm*, rifle or shotgun: (i) that is

semiautomatic with a fixed large capacity feeding device; (ii) that is semiautomatic and capable of accepting, or readily modifiable to accept, any detachable large capacity feeding device; (iii) that employs a rotating cylinder capable of accepting more than ten rounds of ammunition in a rifle or *firearm*. . .. The term "large capacity weapon" shall be a secondary designation and shall apply to a weapon in addition to its primary designation as a firearm, rifle or shotgun…"  Id. (emphasis added).

14.  M.G.L. c. 140 §131(a) states that a "Class A license shall entitle a holder thereof to purchase, rent, lease, borrow, *possess* and carry: (i) *firearms*, including large capacity firearms, and feeding devices and ammunition therefor, for all lawful purposes, subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper. . .." Id. (emphasis added).

15.  M.G.L. c. 140 § 121 does not define "Non-large capacity weapon," but logically the definition includes all modern "firearms," rifles or shotguns that are not otherwise "large capacity weapons."

16.  M.G.L. c. 140 § 129B(6), mandates that "A firearm identification card shall not entitle a holder thereof to *possess*: (i) a *large capacity firearm* . . . or (ii) a *non-large capacity firearm* or large capacity rifle or shotgun. . .." Id (emphasis added).

17.  M.G.L. c. 140 § 131A states that "A licensing authority *under section one hundred and thirty-one* [the LTC-A statute], *upon the application of a person qualified to be granted a license thereunder* by such authority, may grant to such a person, other than a minor, a permit to purchase, rent or lease a *firearm* if it appears that such purchase, rental or lease is for a proper purpose, and may revoke such permit at will." Id. (emphasis added).  This is known as a PTP.

18.     According to M.G.L. c. 140 § 131(d)(i)(e) an applicant for a LTC-A for a "firearm" must be denied the license if he or she "has, in any state or federal jurisdiction, been convicted . . .of a violation of any law regulating the *use, possession* or sale of controlled substances as defined in section 1 of chapter 94C. . .." Id. (emphasis added).

19.     A "Permit to Purchase may be granted only to one capable of being licensed and qualified to be granted a license to carry ("LTC") under G.L. c. 140 § 131." Memorandum from Director of Massachusetts Firearm Support Services, CHSB; See also, M.G.L. c. 140 § 131A. Upon information and belief, the Commonwealth of Massachusetts has not actually issued a PTP since the 1980's, well before the current gun licensing scheme was enacted.

20.     Plaintiff Hunt is 65 years old.

21.     Plaintiff Hunt has a misdemeanor conviction, entered in the state of New York in 1970, for possession of two marijuana cigarettes consisting of much less than one ounce of marijuana. Plaintiff pleaded guilty to the charge at the same time as pleading guilty to "Solicing (sic) rides" [hitchhiking] and paid a $50 fine to resolve the possession of marijuana charge without a lawyer on the same day as the arrest. The hitchhiking charge was resolved with an "Unconditional Discharge" and no fine, probation, imprisonment, or other penalty was imposed. Plaintiff is eligible to possess and bear "firearms" under the laws of the United States and the state of N.Y. where he received his conviction. See Exhibit A.

22.     Plaintiff Hunt has never been convicted of a felony or any other disqualifying misdemeanor in any jurisdiction.

23.     Hunt has never been charged with or convicted of any violent activity, has lead a productive life, is a retired Pastor, and has not had any interaction with the criminal law for more than three decades.

24.     The plain language and application of G.L. c. 140 §§ 131 and 131A prohibit Plaintiff Hunt from obtaining a LTC-A and/or PTP because of his marijuana possession conviction.  Accordingly, Massachusetts has imposed a complete "firearm" ban on Plaintiff Hunt and the entire class of persons convicted of marijuana possession no matter when in history the conviction occurred and without regard for whether the person is not a current user of illegal drugs or drug or alcohol dependent.

25.     Plaintiff Hunt possessed guns lawfully while formerly a resident of Georgia without incident for many years, but his License to Carry was denied when he became a resident of Massachusetts due to his forty-six-year-old marijuana possession conviction for a small amount of marijuana, much less than one ounce.  By Massachusetts law, Hunt was forced to surrender his person firearm and long guns that he owned for many years while a resident of Georgia.

26.     Although not directly binding on the present case because Plaintiff Hunt's conviction was forty-six years ago, in 2008 Massachusetts decriminalized possession and use of marijuana in amounts less than one ounce.  As stated in MGL c. 94C § 32L, a statute entitled An Act Establishing A Sensible State Marihuana Policy, "neither the Commonwealth nor any of its political subdivisions or their respective agencies, authorities or instrumentalities *may impose any form of penalty, sanction or disqualification* on an offender for possessing an ounce or less of marihuana." Id. (emphasis added).

27.     Plaintiff Hunt seeks to lawfully purchase and possess a "firearm" for use in his home for self-defense and to possess arms for the purpose of self-defense and hunting. Defendant's actions have denied Plaintiff his right to possess and purchase a "firearm" for use in his home for self-defense as protected by the Second and Fourteenth Amendments to the U.S. Constitution.

28.     On July 2, 2015, Defendant denied Plaintiff's application for a License to Carry

Firearms on the basis that he had previously been convicted of "a violation of any law regulating the use, possession, or sale of controlled substances, as defined in M.G.L. c. 94C, § 1. See Exhibit B.

29. Defendant has subsequently refused to process Hunt's LTC and FID applications, alleging that Hunt is prohibited from obtaining an LTC and/or FID card due to his forty-six-year-old conviction. Accordingly, Plaintiff Hunt has been completely denied his right to purchase and possess "arms" for use in his home for self-defense as protected by the Second and Fourteenth Amendments to the U.S. Constitution.

30. In the United States District Court, District of Massachusetts matter of Wesson, Woods, & Commonwealth Second Amendment, Inc. v. Town of Salisbury, et al., Civ. Action # 13-10469-RGS (4/18/2014), the U.S. District Court sitting in Boston, Honorable Richard Stearns presiding, heard an as applied challenge by two plaintiffs based on essentially identical facts to the case at bar. The Court in that matter "Adjudged and Declared that Mass. Gen Laws 140 § 131(d)(i)(e) and § 131A as applied to the plaintiffs infringe their Second Amendment right to possess firearms in their home for purpose of self-defense and the right to maintain proficiency in their use." Id. at p. 13. A similar Order was issued by the Honorable Leo Sorokin in the matter of Steven Richmond v. Michael Peraino Chief of Hingham Police Department, Civ. Action 15-10933-LTS (D. Mass. Sept. 9, 2015).

31. Following the Wesson and Richmond cases, the Massachusetts Executive Office of Public Safety and Security issued a directive on October 26, 2015 directing licensing authorities to ". . .read the disqualification provisions of c. 140 § 131 and c. 140 § 129B as inapplicable with respect to that conviction, provided that: 1) The conviction is for simple possession only, and there is no element of distribution or attempt to distribute involved in the offense; 2) There is no reliable indication that the quantity involved was greater than one ounce; and 3) The only

substance involved is marijuana (or "marihuana") as that term is defined in G.L. c. 94C, § 32L." See Exhibit C at p. 2.

32.     Although Plaintiff's 1970 conviction meets all of the conditions of the Directive and is factually indistinguishable to the matters of Wesson and Richmond, Defendant denied Plaintiff's LTC application and refuses to process the FID application pursuant to Mass. Gen Laws 140 § 131(d)(i)(e) and § 131A.

33.     The government of New York failed to adequately maintain Plaintiff's conviction records and has either lost or destroyed the full records from the 1970 conviction. At Defendant's demand, Plaintiff attempted to obtain the New York records from the Rotterdam Police Department but was informed that the records were lost or destroyed and that the arresting officer is deceased.

34.     The only remaining record from the presiding N.Y. Court indicates that Plaintiff Hunt was charged with and pleaded to "Poss. of Dangerous Drug.6th Degree, Class A Misd." Hunt was informed that the judge presiding over his 1970 case is also deceased. See Exhibit A.

35.     In 1970, "Criminal Possession of a Dangerous Drug in the Sixth Degree" included possession of marijuana and was a Class A Misdemeanor punishable by a maximum sentence of one-year incarceration. See, e.g., N.Y.P.L. c. 788 §220.05 (1969).

36.     Defendant has relied on the fact that the remaining N.Y. Court record does not contain the word "marijuana" as a basis to deny Plaintiff his Constitutional right to lawfully possess arms.

37.     By requiring that Plaintiff provide a court or police document that no longer exists (due to no malfeasance on Plaintiff's part) that contains the word "marijuana," Defendant has unconstitutionally shifted the burden to Plaintiff to prove that he is worthy to be entitled to a fundamental individual right under the United States Constitution, in violation of the Second

Amendment and Fourteenth Amendment due process protections.

38. Defendant cannot support his denial of Plaintiff's Second and Fourteenth Amendment rights under any level of Constitutional scrutiny, and cannot support his shifting the burden to the citizen to do an impossible task in order to prove entitlement to a fundamental individual right.

39. Plaintiff Comm2A is a nonprofit organization recognized under § 501(c)(3) of the Internal Revenue Code. The purposes of Comm2A include education, research, publishing, and legal action focusing on the constitutional right of the people to possess and carry firearms.

40. Comm2A expends significant resources assisting people who are denied LTCs and PTPs under the authority of M.G.L. c. 140, §§ 131 and 131A, including people denied licenses from the Hingham Police Department.

41. Plaintiff, a supporter of Comm2A, has been denied and/or unconstitutionally prohibited from receiving a LTC pursuant to M.G.L. ch. 140, §§ 131 and is injured in his inability to possess handguns and other lawful arms for protection.

42. In addition, as supporters of Comm2A and members of the general public have contacted Comm2A as a result of the denial of their LTC's, Comm2A has expended time, energy, and money to consult with and provide assistance to these individuals, and particularly with regard to issues surrounding their inability to exercise the right of armed self-protection.

43. Comm2A would not expend its organizational resources to respond to the demands of its supporters and of the general public regarding the restriction of their LTCs by Defendant if Defendant did not impose restrictions in the first instance. Comm2A would instead use its organizational resources to pursue other organizational priorities.

**COUNT I**
**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**
**(U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 )**

44. The preceding paragraphs are incorporated herein by reference.

45. The plain language and interpretation of M.G.L. c. 140 §§ 131 and 131A and 129B, and the denial of Plaintiff Hunt's LTC license application and refusal to process his FID application effectively denies Plaintiff Hunt the constitutional right to purchase and possess a "firearm" and other arms for self-defense in his home in Massachusetts, and the right to maintain safe proficiency by transporting it, within reasonable transportation regulations, to a firing range for target practice.

46. The defendant's denial of Plaintiff Hunt's LTC application constitutes a deprivation of Plaintiff's fundamental constitutional right to keep and bear arms under color of law.

47. The defendants' denial of Plaintiffs' LTC application is an actual controversy within the Court's jurisdiction.

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, as follows:

(A) Declaratory judgment that M.G.L. c. 140 §§ 131(d)(i)(e), 131A and 129B, as applied, violate Plaintiff's constitutional right to keep and bear arms under the Second and Fourteenth Amendments to the U.S. Constitution, to the extent they allow Defendant to prohibit otherwise qualified private citizens from possessing "firearms" or other arms for the purpose of self-defense;

(B) Declaratory judgment that the denial of Plaintiff's application for a Massachusetts

License to Carry violates Plaintiff's constitutional right to keep and bear arms under the Second and Fourteenth Amendments to the U.S. Constitution;

(C)     Declaratory judgment that the government's burden shifting to Plaintiff by requiring an impossible task of obtaining government records that do not exist in order to prove his worthiness to exercise a fundamental right violates Plaintiff's constitutional right to keep and bear arms under the Second Amendment and due process rights under the Fourteenth Amendment to the U.S. Constitution;

(D)     An Order permanently enjoining Defendant, his officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from utilizing Plaintiff's 1970 marijuana conviction in any manner to enforce M.G.L. c. 140 §§ 131(d)(i)(e), 131A, or 129B as applied to Plaintiffs or otherwise deny Plaintiff's Second Amendment right.

(E)     Awarding Plaintiffs their reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

(F)     Awarding such other and further relief as may be equitable and proper.

Plaintiff Demands a Jury Trial On All Counts So Triable

## VERIFICATION

Alan Hunt, being duly sworn, deposes and says:

I am the Plaintiff in the above-entitled matter. I have read the foregoing Complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters, I believe them to be true.

Signed under the pains and penalties of perjury, this 5th day of April, 2016.

_____
Alan Hunt

Respectfully Submitted,
The Plaintiffs,
by Their Attorney,

/s/Jeffrey Scrimo
Jeffrey T. Scrimo
LYNCH SCRIMO—ATTORNEYS
PO Box 1787
68 Main St., 2nd Floor
Lenox, MA 01240
BBO# 649864
(P) 413-637-1300
(F) 866-230-7304
(email) Jeff@LenoxAttorney.com